(No. 738—Claim denied.)

JOHN LEWSON, Claimant, *vs*. STATE OF ILLINOIS, Respondent.

*Opinion filed April 16, 1925.*

STATE OFFICERS—*cannot admit away rights of State by stipulation.* No officer or agent of the State can by stipulation or otherwise admit away the interest or rights of the State in any suit, and that is specially true where claimant brings his suit for services rendered for the officer or agent who enters into such stipulation.

SAME—*appropriation for officers—no right to contract indebtedness against State.* No officer has the legal right to contract any indebtedness on behalf of the State, nor assume to bind the State in any amount in excess of the moneys appropriated for his office, unless authorized by law.

SAME—*officer cannot enter into contract when.* No officer or agent of the State can contract to bind the State, directly or indirectly, for the payment of money, unless expressly authorized by law.

SAME—*cannot ignore limitation of appropriation for their office.* State officers cannot ignore the limitations of appropriations made by the Legislature for their respective offices or departments and rely on the Court of Claims to take care of all claims made in excess of such appropriations.

SAME—*no equitable relief against statutory prohibition.* Where the statute forbids the doing of a thing equity will not afford relief.

RULES OF COURT—*must be complied with.* Where claimant fails to comply with Rule 5 of the court, the court may dismiss the claim.

FRED L. LOYDA, for claimant.

EDWARD J. BRUNDAGE, Attorney General, for respondent.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This is a claim filed November, 1923, by John Lewson of Chicago, Cook County, Illinois, in the sum of $4,000.00 on a contract awarded to him by the Attorney General to compile and digest the report of the Attorney General, 1921-1922, for which he and the Attorney General had an understanding that he would pay claimant a reasonable compensation. The claimant, after a statement of his qualifications to do such work as that alleged in this declaration, says that in May, 1917, the Honorable Edward J. Brundage, Attorney General of Illinois, appointed claimant his Assistant Attorney General, at an annual salary of $3,600.00 per annum. After doing quite a lot of work in such capacity, claimant was to undertake the digesting and compiling the opinions and reports of the Attorney General, providing the claimant with a special stenographer at an annual salary of $1,400.00, and with a well furnished office, stationery and supplies. Claimant had edited and compiled several reports, for which we presume he was paid, or that such duties constituted

a part of the duties of his office while on salary as stated. That in due time, we can't tell when, he entered upon the digesting and compiling of the report of 1921-1922, when, on account of vetoes of certain appropriations to the Attorney General, said officer deemed it advisable to discontinue the office services of claimant, and assigned his stenographer to other work; that in July, 1922, the Attorney General again engaged him to resume his work of making the bi-ennium report of 1921-1922, and that said report was prepared and published and distributed.

That at the time, July, 1922, there existed and were available funds which had been appropriated to the use of the Attorney General out of which this claim might have been paid; that by the time claimant completed the work the said funds out of which he might have been paid were either exhausted or were urgently needed by the Attorney General for other purposes, such as carrying on the routine business of his office and necessary litigation, and he refused to pay claimant on account of compiling and digesting the said report of 1921-1922, including stenographer fees and other expenses, the said sum of $4,000.00.

Attached to the declaration appears this stipulation, to-wit:

"In the Court of Claims of the State of Illinois, September Session, 1923.

John Lewson *vs.* State of Illinois; claim for compensation for services rendered Attorney General.

### STIPULATION:

It is hereby stipulated and agreed by and between the parties to the above entitled cause that the facts in statement of claim are true in substance and in fact, and that $4000.00 is reasonable compensation for the services performed by said claimant as alleged.

(Signed)   JOHN LEWSON, *Claimant.*

(Signed)   EDWARD J. BRUNDAGE, *Attorney General.*"

Rule 5, adopted by this court, requires that every claimant shall state whether or not any other person has any interest in his claim, and if so who and how much, etc.; whether presented to any state department or state officers, tribunal, etc.; and a bill of particulars, stating in detail each and every item and the amount claimed on account thereof, and the same shall be attached to claimant's declaration.

Claimant entirely ignores this rule. It has been repeatedly held by this court that said rule must be complied with, especially in important and unusual cases like the one at bar.

While this case is more in nature of a case in equity than a suit at law, still the rule makes no distinction between the two in the requirement set forth in Rule 5.

A bill of particulars should always be filed for the information of the court.

The claim was brought and filed by claimant on the 9th day of November, 1923. His attorney entered his appearance as attorney in said claim January 8, 1924; and neither claimant or his attorney has ever filed a brief or presented an argument in the case; or offered evidence of other witnesses familiar with such work, as claimant claims he has done, as to its reasonable value.

It is true the Attorney General admits by stipulation that claimant did the work as alleged and that the price charged by him is reasonable.

The Attorney General cannot, nor can any other state officer or agent of the State, by stipulation, or otherwise, admit away the interests and rights of the State in any suit. This is especially true in cases wherein the claimant, bringing the suit, is bringing it for services rendered by claimant for the officer confessing the right of action against the State. Such procedure is contrary to public policy.

The State legislature biennially makes appropriations for ordinary and contingent expenses, etc., for the operation, maintenance and the administration of the several offices, departments, institutions, boards, commissions and agencies of the State government.

The appropriation bill specifies for what purpose or purposes the appropriation is made.

The elective State officers and the various State institutions know the amount or amounts appropriated for them respectively, and that it is intended to be sufficient to conduct the duties of such offices or departments for two years after July 1st, succeeding the appropriation. It is unnecessary to cite the statute on this point.

Again, the statute of Illinois provides that "No officer, institution, department, board or commission shall contract any indebtedness on behalf of the State; nor assume to bind the State in any amount in excess of the money appropriated, unless expressly authorized by law to do so." *Cahill-Callagan, Illinois Revised Statute,* 1923, Chap. 127b, Sec. 30, page 3246.

This would seem to preclude claimant from right of recovery, but he claims that equity should aid him in his predicament. Where the statute prohibits the doing of a thing, equity will afford no relief. Good conscience, without the aid of law or equity, can do nothing for claimant, except to sympathize with him, a feeling which this court entertains for this claimant. Again, the claimant knew before he enlisted in the work the last time he went at it that it might be doubtful about his pay, and he should have thus been a little more cautious in doing the work. It is not right clear whether or not claimant was still getting a salary as an assistant to the Attorney General when he did this work. We are inclined to think his salary has ceased. This was another danger signal for him in contracting with his former employer. No officer or agent of the State can contract to bind the State directly or indirectly for the payment of money for any purpose, unless expressly authorized by law. If he has any common law powers that conflict with the statute, the statute governs. The legislature, through its committees, ascertains biennially what is a reasonable and proper amount to be appropriated for each officer and department. It is a vital part of the duties of the legislature, in its wisdom and deliberations, to carefully ascertain what amount of money our State should expend in the succeeding two years; and we believe that the legislature and the governors of Illinois have always been very liberal in the allowances in the appropriation bills.

To allow this claim would be to establish a most dangerous precedent. It would open up the avenues for all State officers and State departments to ignore the limitation of the appropriation for their respective offices or departments, if they saw fit so to do, and rely on the Court of Claims to take care of all claims made in excess of such appropriations.

We believe the legislature and Governor are much better informed on matters of appropriations than the Court of Claims is or ever will be, and that that subject is exclusively within their powers and duties, and we will not usurp it. We could cite several Illinois Supreme Court decisions in support of our views; but we feel it is unnecessary to do so.

For the reasons above stated, the case will be dismissed.